IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN WILLIAMS, | : |
| | : Civil Action No. 19-0101 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, QUEHANNA BOOT CAMP, STEVEN GODFREY, TERRI SOMMERS, FREDDY NUNEZ, DEBRA CUTSHALL AND CORRECT CARE SOLUTIONS, LLC., | : |
| | : |
| Defendants. | : |

## BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT

## PLAINTIFF'S ALLEGATIONS

Plaintiff John Williams ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 of the Civil Rights Act for violations of his rights under the Eighth Amendment to the United States Constitution. "Specifically, Plaintiff alleges that the Defendants' policies and actions relating to Plaintiff's serious medical condition rose to the level of deliberate indifference." ECF No. 1 ¶ 1 (Count I). Plaintiff also mentions § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (Count II), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 (Count III), and the Due Process Clause of the Fourteenth Amendment (Count IV). Id. DOC Defendants[1] now move to dismiss Plaintiff's Complaint against all DOC Defendants in its entirety. [2]

---

[1] Pennsylvania Department of Corrections, Quehanna Boot Camp, Steve Godfrey, Terri Sommers, and Defendant Nunez

[2] In a phone conference on Wednesday, September 18, 2019, undersigned and Plaintiff's counsel held a phone conference during which they agreed that amendment would not cure their reasonable disagreements.

1

**FACTUAL BACKGROUND**

Plaintiff entered the custody of the Department of Corrections in January of 2016. ECF No. 1 ¶ 11. On the basis that Plaintiff was addicted to drugs and alcohol, he was enrolled in State Intermediate Punishment ("SIP") for his drug and alcohol-related offenses. Id. ¶ 12. During his incarceration, Plaintiff spent time at "a number of different state facilities including Western Penn, Camp Hill, Quehanna Boot Camp…Renewal Inpatient Care Centers, Riverside Community Correction Center, Penn Pavilion, Community Correction Center Sharon, SCI Greene and SCI Houtzdale." ECF No. 1 ¶ 11. At each facility, Plaintiff received continuous, appropriate care based on his particular rehabilitative needs. However, "a person who fails in the program, due to misconduct or poor progress in treatment, [is] subject to resentencing by the court under traditional sentencing guidelines."[3]

At some point before his incarceration, Plaintiff elected to have gastric bypass surgery. ECF No. 1 ¶ 13. Plaintiff asserts that he also suffered from high blood pressure, gout, knee and back issues, and scabies. Id. However, he does not directly relate any of these ailments to the harms alleged. Plaintiff avers that he made Defendants aware of his medical conditions through providing the defendants "a copy of doctors notes." Id. ¶¶ 15, 16. Plaintiff further avers that he "filed numerous complaints, grievances and medical requests." Id. ¶ 22.

According to Plaintiff, Correct Care Solutions LLC "is responsible for the medical care and well being of inmates" and Deborah Cutshall "was responsible for the medical care of Plaintiff as well as his enrollment in the SIP program." ECF No. 1 ¶ 8. It can be inferred from the pleadings that Plaintiff was under the care of Correct Care Solutions and Deborah Cutshall during his

---

[3] Publically available at https://www.cor.pa.gov/About%20Us/Initiatives/Pages/SIP.aspx

2

incarceration. It appears that complaints and grievances would have been directed to DOC Defendants and medical requests would have been directed to Medical Defendants.

Ultimately, Plaintiff did not complete SIP. ECF No. 1 ¶ 28. He was resentenced under traditional sentencing guidelines. Id. ¶ 29. This extended the amount of time of Plaintiff's incarceration beyond what it would be under SIP but not beyond what is statutorily mandated by his conviction. See ECF No. 1 ¶ 31. At no point does Plaintiff argue that he was denied due process rights or any other rights during his original conviction. Plaintiff served his sentence and was released in July of 2018. Id. ¶ 11.

## STANDARD OF REVIEW

In ruling on a motion to dismiss pursuant to Fed.R.Civ.P 12(b)(6), the Court must "accept all factual allegations [in the complaint] as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57, 570 (2007). The plaintiff must "nudge [his or her] claim across the line from conceivable to plausible" in order to survive a motion to dismiss. Phillips, 515 F.3d at 234, (citing Twombly). This plausibility requirement means that the complaint must provide enough factual matter to suggest the required element of the claim. Id.

The United States Supreme Court has made it clear that the Twombly standard applies to §1983 claims. Ashcroft v. Iqbal, 556 U.S. 662, 663-664 (May 18, 2009). First, the court should identify "the allegations in the complaint that are not entitled to the assumption of truth." Id. at 680. These allegations are conclusory allegations that merely set forth a recitation of the elements of the cause of action. Id. at 681. Next, the court should consider the remaining, factual allegations, "to determine if they plausibly suggest an entitlement to relief." Id.

**ARGUMENT**

Plaintiff has not alleged sufficient facts in his Complaint to plausibly suggest entitlement to relief against DOC Defendants. Even assuming all the factual allegations in the complaint are true, Plaintiff is not entitled to relief as a matter of law.

**A.  Count I fails against DOC Defendants.**

There was no Eighth Amendment violation. In order to state an Eighth Amendment claim, a plaintiff must demonstrate: (1) conditions posing a substantial risk of serious harm; and (2) that prison officials have a "sufficiently culpable state of mind," which means deliberate indifference, to that risk. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hamilton v. Leavy, 117 F.3d 742, 476 (3d Cir. 1997); Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001). In order to be held liable, an official must therefore both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must actually draw the inference. Farmer, 511 U.S. at 837-38. Plaintiff fails to satisfy either prong.

*1. Even as alleged, Plaintiff's conditions did not rise to the high standard of substantial risk of serious harm.*

Plaintiff alleges that his elective surgery "required that he eat several small meals throughout the day, which meant that [he] relied heavily on supplementing his nutrition with items from the commissary." ECF No. 1 ¶ 17. He further alleges that "he was unable to eat within the time period provided at Quehana and he was not able to supplement his diet with items from the commissary." Id. at ¶ 21. However, Plaintiff never even alleges that he missed a scheduled meal. Based on his Complaint, he ate every meal for the exact same duration as the other inmates.

Any limitations on food must be a ***substantial deprivation*** of food to set forth a viable Eighth Amendment claim. Lindsey v. O'Connor, 327 Fed. Appx. 319, 321 (3d Cir. 2009) (emphasis added).  Even deprivation of multiple meals does not rise to the level of a constitutional

4

violation. See Ball v. Struthers, 2012 WL 2946785 at *13 (M.D. Pa. 2012). Plaintiff ate regularly. Thus Plaintiff's claims of "extreme agony" are simply not supported by the facts, and there are no other harms alleged. He cannot now claim a substantial risk of serious harm. Consequently, Count I should be dismissed against all DOC Defendants.

### *2. Individual DOC Defendants did not have requisite personal involvement.*

In order to make out a claim against defendants in their individual capacities pursuant to § 1983, a plaintiff must allege facts demonstrating that defendants had personal involvement in the alleged wrongs. Rode, 845 F.2d at 1207. Liability can only be imposed if that official played an "affirmative part" in the complained of misconduct. See Chincello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). A defendant must be shown by the allegations contained in the Complaint to have been personally involved in or have actual knowledge of and acquiesced in the commission of the wrong. See Rizzo v. Goode, 423 U.S. 362 (1976). Additionally, the supervisory official's alleged misconduct cannot be merely a failure to act. See Commonwealth of Pennsylvania v. Porter, 659 F.2d 306, 336 (3d Cir. 1981), cert. denied, 458 U.S. 1121 (1982).

According to the Complaint, Hearing Examiner Nunez "was responsible for providing Plaintiff with due process of law and a reasonable hearing." ECF No. 1 ¶ 9. Hearing Examiner Nunez therefore had no personal involvement in the alleged Eighth Amendment claims, and Count I against him must be dismissed. Defendant Steve Godfrey was the drug and alcohol supervisor who was "responsible for the oversight of facility staff and facility operations generally." Id. ¶ 6. Terri Somers, as SIP administrator, was "responsible for the oversight of facility staff and facility operations generally." Id. ¶ 7. But liability under § 1983 may *not* be predicated solely upon the operation of *respondeat superior*. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Rode, 845 F.2d at 1207). It is not enough to merely hypothesize about a defendant's personal

involvement without any factual allegations to support the hypothesis, nor can a plaintiff rely on the discovery process to prove facts not alleged. Evancho at 353-354. Therefore, Count I must be dismissed against all individual defendants on this ground as well.

### *3. Plainitff was under the care of medical professionals.*

According to Plaintiff, Correct Care Solutions LLC "is responsible for the medical care and well being of inmates" and Deborah Cutshall "was responsible for the medical care of Plaintiff as well as his enrollment in the SIP program." ECF No. 1 ¶ 8. It can be inferred from the pleadings that Plaintiff believes Correct Care Solutions and Deborah Cutshall supervised his medical care for the relevant time periods in the Complaint.

Since Plaintiff was under the supervision of medical personnel, his allegations against the DOC Defendants do not support a claim for deliberate indifference under the Eighth Amendment. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir.2004). None of the DOC Defendants are medical personnel.[4] See Roberts v. Tretnick, 2014 WL 4218249 at *3-4 (W.D. Pa. 2014). Non-medical personnel may rely on those serving in medical capacities to provide medical services to inmates. Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir.1993). Once a prisoner plaintiff comes under the care of medical professionals, a non-medical prison official cannot be deliberately indifferent as a matter of law for failing to intervene in the medical treatment unless that non-medical official has

---

[4] As this Court has recognized,

> Courts in the Third Circuit have recognized that even CHCAs are 'undisputably administrators, not doctors,' and, therefore, under Spruill, *supra*, will generally be justified in believing that the prisoner is in capable hands' if the 'prisoner is under the care of medical experts.' Thomas v. Dragovich, 142 Fed.Appx. 33, 39 (3d Cir. 2005); see also Fantone v. Herbik, 528 Fed.Appx. 123, 128 n. 6 (3d Cir. 2013); Roberts v. Tretnick, 2014 WL 4218249, *3-*4 (W.D.Pa. 2014); McEachin v. Wilson, 2009 WL 5206008, *13 (W.D.Pa. 2009).

Whitehead v. Thomas, 2017 WL 2664490, *7, *report and recommendation adopted*, 2017 WL 2672646 (W.D.Pa. 2017), *aff'd sub nom.* Whitehead v. Wetzel, 720 F.App'x 657 (3d Cir. 2017).

reason to believe or actual knowledge that prison medical providers are mistreating the prisoner. Id. at 69; See also Spruill, 372 F.3d at 236. Even if DOC Defendants knew of Plaintiff's medical conditions, all DOC Defendants would be justified in relying on the expertise of the medical professionals and their provision of care to Plaintiff.

### B. Counts II and III fail against DOC Defendants as well.

The standards for determining liability under the ADA and Rehabilitation Act are the same. See McDonald v. Pennsylvania, 62 F.3d 92, 94 (3d Cir. 1995); Bowers v. NCAA, 475 F.3d 524, 535 n.12 (3d Cir. 2007). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Doe v. County of Centre, 242 F.3d 437, 446 (3d Cir. 2001); Spencer v. Courtier, 552 Fed. Appx. 121, 125 (3d Cir. 2014); Brown v. Deparlos, 492 Fed. Appx. 211, 215 (3d Cir. 2012) (citing 42 U.S.C. §12132). "Similarly, §504 of the Rehabilitation Act, 29 U.S.C. §794, prohibits discrimination on the basis of disability by programs that receive federal funds." P.P. v. W. Chester Area Sch. Dist., 585 F.3d 727, 730 (3d Cir. 2009).

**1.** *Plaintiff is not entitled to relief under the ADA or the Rehabilitation Act since he is not a qualified individual with a disability.*

To establish a prima facie case of discrimination under the ADA, a plaintiff must first demonstrate disability within the meaning of the ADA. Gaul v. Lucent Technologies, Incorporated, 134 F.3d 576, 580 (3d Cir. 1998). To have a disability, one must be "substantially limited in a major life activity." 29 C.F.R. § 1630.2(j)). This means a plaintiff must be "unable to perform a major life activity that the average person in the general population can perform" or be "***significantly restricted*** as to the condition, manner or duration under which [they] can perform a particular major life activity as compared to the condition, manner, or duration under which the

7

average person in the general population can perform that same major life activity." <u>Walton v. Mental Health Ass'n</u>, 168 F.3d 661, 665 (3d Cir. Pa. 1999) (emphasis added).

Simply, the types of restrictions that Plaintiff cites in his Complaint are not significant restrictions compared to average people in the general population. Eating slower is subjective and often desirable. Eating smaller meals is one of many nutritional habits and variations subject to preference. Average people often impose these restrictions on themselves. In fact, these are the exact intended effects of Plaintiff's surgery.

### 2. *Bariatric surgery is an elective procedure and not a physiological condition in and of itself.*

At some point before his incarceration, Plaintiff elected to have gastric bypass surgery. ECF No. 1 ¶ 13. Plaintiff therefore *chose* to limit his food intake in the particular way that his food intake is limited. There is no evidence in the Complaint that he has/had an underlying physiological condition changing his eating habits. There are no cases explicitly listing bariatric surgery as a qualifying disability. Other Courts have found that obesity, a limiting physical condition, must be the result of a physiological disorder to be considered a disability for purposes of the ADA. <u>See e.g.</u> <u>Francis v. City of Meriden</u>, 129 F.3d 281, 286 (2d Cir.1997); <u>Andrews v. State of Ohio</u>, 104 F.3d 803 (6th Cir.1997)); <u>Greenburg v. Bellsouth Telecommunications, Inc.</u>, 498 F.3d 1258, 1264 (11th Cir. 2007). The same logic should apply here. Even under the most expansive reading of the ADA and ADAAA, Plaintiff does not have a disability.

### C. **Count IV fails against DOC Defendants because serving a full sentence does not violate procedural due process.**

Plaintiff's resentencing under SIP does not implicate the Fourteenth Amendment as a matter of law. To prevail on a procedural due process claim under §1983, Plaintiff must prove: (1) deprivation of a protected liberty or property interest, (2) that this deprivation was without due

process, (3) causation (4) defendant(s) acted under color of state law, and (5) injury as a result of the deprivation without due process. Sample v. Diecks, 885 F.2d 1099, 1113-14 (3d Cir.1989). Plaintiff has not done so.

It is true that Plaintiff did not complete SIP. ECF No. 1 ¶ 28. But the result was resentencing under traditional sentencing guidelines. Id. ¶ 29. This extended the amount of time of Plaintiff's incarceration beyond what it would be under SIP but not beyond what is statutorily mandated by his conviction. See ECF No. 1 ¶ 31. At no point does Plaintiff argue that he was denied due process rights or any other rights during his original conviction. As such, the Court need not accept legal conclusions or inferences drawn by a plaintiff if unsupported by the facts set forth in the complaint. California Pub. Employee Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004). The allegations of due process violations in the instant case amount to bare assertion. Without more, Count IV must be dismissed.

For all the foregoing reasons, Plaintiff's claim fails as a matter of law. Further amendment of the Complaint would be futile.

WHEREFORE, it is requested that Plaintiff's Complaint be dismissed with prejudice against all DOC Defendants.

          Respectfully submitted,

          JOSH SHAPIRO,

          Attorney General

By:  /s/ Justin A. Gayle

          JUSTIN A. GAYLE
          Deputy Attorney General
          Attorney I.D. No. 74316

                                    Karen Romano
                                    Chief Deputy Attorney General

OFFICE OF ATTORNEY GENERAL       Dated:  October 11, 2019
1251 Waterfront Pl
Mezzanine Level
Pittsburgh, PA  15222

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the within *Brief in Support of Motion to Dismiss* was electronically filed with the Court through the ECF system.

/s/ Justin A. Gayle
Justin A. Gayle
Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
1251 Waterfront Pl
Mezzanine Level
Pittsburgh, PA  15222

Date: October 11, 2019